McCollum *et al. v.* Uhl.

No. 14,632.

## McCOLLUM ET AL. *v.* UHL.

DRAINAGE.—*No Notice.*—*Collateral Attack.*—An order made establishing a ditch without notice to those interested is void; but if only part have been notified, it is void as to all those who have not received notice. Those who have not received notice may attack the proceeding collaterally.

SAME.—*Collateral Attack for Want of Notice.*—*Pleading.*—The person who collaterally attacks an order establishing a ditch and the assessments incident thereto, because of lack of notice, must aver in his complaint, fully and specifically, that no notice was given.

SAME.—*Notice.*—*Presumption as to Giving, and as to the Order Establishing the Drain.*—In a collateral attack upon an order establishing a ditch, and making an assessment, it will be presumed that the court establishing the ditch found, as a jurisdictional fact, that a notice was duly given before it entered the order.

SAME.—*Priority of Tax and Ditch Lien.*—The lien of the State for taxes is paramount and superior to the lien of a ditch assessment.

SAME.—*Redemption from Tax Sale by Holder of Ditch Lien.*—The holder of a ditch lien has a right to redeem from a sale of the land for taxes.

SAME.—*Foreclosure of Tax Lien.*—*Parties to Ditch Proceeding.*—*Party Acquiring Ditch Lien.*—The holder of a tax lien seeking to foreclose it after a ditch is established, and before its construction is let, should make parties to his petition all who were parties to, and affected by, the ditch proceedings; and any person acquiring the ditch lien, or any part of it, by reason of his having constructed the ditch, after the commencement of the proceeding to foreclose the tax lien, will not be bound thereby, unless the parties to the ditch proceedings are made parties to the tax lien foreclosure proceedings.

From the White Circuit Court.

*Robert Gregory*, for appellants.

*E. B. Sellers* and *W. E. Uhl*, for appellee.

McBRIDE, J.—This was a suit by appellee against appellant, McCollum, and Robert Breckinridge, treasurer of White county, to enjoin the collection of a ditch assessment.

The facts, as alleged in the complaint, are substantially as follows:

McCollum *et al. v.* Uhl.

On the 5th day of March, 1883, the then treasurer of White county sold the west half of the northwest quarter of section twenty-nine (29), township twenty-seven (27) north, of range three (3) west, in said county, for taxes which had been assessed against the land from the year 1874 to 1882, inclusive, and were then delinquent. Martin L. Bundy was the purchaser, paying $126.81.

The land was not redeemed, and on the 10th day of August, 1885, the auditor of the county made Bundy a deed.

On the 1st day of October, 1885, Bundy commenced an action in the White Circuit Court to quiet his title to the land. In this he failed, and the court, instead of quieting his title, foreclosed his lien for taxes, and the land was sold by the sheriff on the 20th day of February, 1886, under the decree of foreclosure thus rendered, for $308, appellee being the purchaser and receiving a sheriff's deed. He claims title under this deed.

On the 3d day of December, 1878, a petition was filed in the auditor's office of White county asking the establishment by the board of commissioners of said county of a ditch affecting the lands in controversy. On the 3d day of March, 1879, said board appointed viewers, who filed their report with the auditor on the 26th day of April, 1879, and on the 5th day of June, 1879, said board ordered that said ditch be established. The viewers, by their report, set apart and apportioned to said land, together with the east half of the northeast quarter of section thirty (30), a share of the work of constructing said ditch, and estimated the cost of the same at $261.62, and also apportioned to said two tracts together $14.50 of the costs and expenses of establishing the ditch. On the 23d day of June, 1886, the auditor of the county sold the contract for constructing that portion of the ditch apportioned to said two tracts of land to appellant George McCollum, who did the work, and received from the

auditor a certificate showing the work completed, and that there was due to him $315 for the same.

This amount the auditor charged against the land on the tax duplicate, and when this suit was commenced the county treasurer was taking steps to collect it by a sale of the land. The prayer of the complaint asks that appellee's title be quieted as against the assessment, and that the treasurer be enjoined from attempting to enforce collection by sale of the land.

Appellee bases his contention upon two grounds. He says:

" 1. The owner of the land had no notice of the ditch proceedings. They are therefore a nullity as to him, and the assessment against his land is invalid, and constitutes no lien."

" 2. The lien of the State for taxes is paramount, and the sale and deed under the decree foreclosing the tax lien operated to extinguish the lien of the ditch assessment, even if it was valid in the first instance."

The averments of the complaint relative to notice of the ditch proceeding are as follows:

"And the plaintiff says that the then owner of said land (as shown by the records in the recorder's office of said county) did not sign said petition, nor was he named therein, and that said auditor never gave him any notice of the pendency and prayer of said petition, or of the time set for the hearing thereof by posting, publication in any newspaper, or otherwise. And said auditor did not at any time before the hearing of said petition by said board, and the establishment by it of said ditch, post or publish any notice in any newspaper of the pendency and prayer of said petition, and the time set for the hearing thereof in which the said owner of said real estate was named. And that said board did not find or adjudge in any order made by it in said proceedings that said owner of said lands had received any notice what-

ever of the pendency of said petition, nor of the time set for the hearing of the same."

It is also averred that the report of the viewers was not recorded.

The statute under which the order was made for the establishment of the ditch in question required the auditor to give notice, and prescribed that the notice should contain "the names of the owners of the lands" that would be affected thereby. 1 R. S. 1876, p. 428, sec. 2. An order made without notice would be void. If notice was given as to some but not as to all the owners of the lands affected, those not notified would not be bound by the order made, and could attack it collaterally. *Brosemer* v. *Kelsey,* 106 Ind. 504; *Davis* v. *Lake Shore, etc., R. W. Co.,* 114 Ind. 364.

The attack in this case upon the order being collateral, it is incumbent on the appellee to show that the proceeding is void, and relying upon want of notice to render it void the averments of the complaint must be full and specific that no notice was given. In this respect the complaint is fatally defective.

The averment that no notice was given to the then owner of the land, as shown by the records in the recorder's office, is not sufficient.

The statute required notice to the owner of the land, whether he was shown to be such owner by the records in the recorder's office or not, and the complaint does not contain an averment that notice was not given to the owner. This qualified negation of notice is not sufficient. The attack here made upon the order is collateral. Before the board of commissioners could be authorized to make an order establishing the ditch the law required the giving of notice. The giving of the notice was jurisdictional, and the fact of such notice was a jurisdictional fact which, in the absence of express averment to the contrary, will, when the order is attacked collaterally, be presumed to have been found by the board prior to making the order. *Board, etc.,*

v. *Hall*, 70 Ind. 469; *Pendleton, etc., T. P. Co.* v. *Barnard*, 40 Ind. 146; *Evansville, etc., R. R. Co.* v. *City of Evansville*, 15 Ind. 395; *Board, etc.,* v. *Markle*, 46 Ind. 96; *Jackson* v. *Smith*, 120 Ind. 520.

The appellee sought to meet this by averring that "said board did not find or adjudge, in any order made by it in said proceeding, that said owner of said lands had received any notice whatever of the pendency of said petition, nor of the time set for hearing of the same," but it will be observed that this averment is qualified, as is the averment relative to the giving of notice. The "said owner" referred to being "the then owner as shown by the records in the recorder's office." This averment is even more defective than that relative to the giving of notice. It is not averred that the board did not find or adjudge that notice was not *given* to the owner of the land, but that they did not find or adjudge that notice was not *received* by said owner.

With reference to the remaining proposition, appellee's premise is unquestionably correct. The lien of the State for taxes is paramount and is superior to the lien of the ditch assessment. It does not follow, however, that because appellee has acquired the paramount and superior lien upon the land appellant may not also have a valid and subsisting lien thereon, although junior and subordinate. The order establishing the ditch was made June 9th, 1879. The lien of the assessment attached at that time. Appellee's tax lien was not foreclosed until the 15th day of December, 1885. There seems to have been no effort to foreclose the tax lien as against the ditch assessment. Appellee in his brief says this was because at that time no "person or legal entity of any kind or description amenable to legal process had acquired any interest in or lien against the land by virtue of the ditch proceeding." It is not material why there was no foreclosure as against the assessment. It is enough that there was none. That lien still exists and its holder is en-

McCollum *et al. v.* Uhl.

titled to enforce it subject to the superior rights of appellee under his paramount lien.

Such rights as the appellant McCollum has must, however, be worked out through the county treasurer. If the owner of the land will not pay the assessment it is the duty of the treasurer to sell the land. Of course the purchaser will take it subject to appellee's claim, and must redeem from the tax foreclosure sale before he can realize any benefit from his purchase, but this we think he has equitably the right to do.

The court erred in overruling appellants' demurrer to the complaint. This renders it unnecessary to consider the other errors assigned.

Judgment reversed, with directions to the circuit court to proceed in accordance with this opinion.

Filed April 1, 1891.

## On Petition for a Rehearing.

McBride, J.—Appellee's counsel have filed a very earnest and ingenious brief in support of their petition for a rehearing. They say two question are involved:

1st. Is it possible to extinguish the lien of a ditch assessment by the foreclosure of a superior tax lien?

2d. Who are necessary parties to a suit for that purpose?

There can be no doubt that it is possible to extinguish the lien of a ditch assessment by the foreclosure of a superior tax lien. No such question confronts us in this case, for the reason, as stated in the original opinion, that there was no attempt to foreclose the tax lien as against the ditch assessment.

Counsel now say : " Where a lien such as a ditch assessment exists, and has not reached the period of vesting, the effect of foreclosing a superior lien is not to bar an equity of redemption—none exists—but to extinguish the lien itself."

The error in appellee's position is, that he assumes that

there can be a valid ditch assessment in which no one has an interest entitling him to be made a party to the proceeding seeking its extinguishment, and that it is possible, by a decree of court, to extinguish the lien of such assessment without having before the court any of the parties interested in it. The complaint shows the establishment, by order of the board of county commissioners, of a ditch across the land in question, and that the sum of $261.53 was assessed against it as the proportion properly chargeable thereon for the construction of the ditch. This the complaint also shows was done long before the proceeding was commenced to foreclose the tax lien. All who were beneficially interested in the construction of the ditch were interested in the assessment thus made against the particular land.

A ditch established by order of the board of county commissioners, for the drainage of wet lands, although it may pass over the lands of many men, and be divided into many allotments for its construction, and the cost of construction may be apportioned to many different tracts, yet it is to be considered as an entirety, and the several allotments and assessments as parts of an entire system. For instance, suppose the allotment to the land in question was of the terminal section of the ditch, and unless it was constructed there would be no outlet, could it be said that the owners of lands living above and assessed for the construction of the ditch had no proprietary interest in such terminal allotments?

If appellees contention is right, after a ditch has been established a section may be cut out of it, or the outlet destroyed by the foreclosure of a tax lien upon some one of the tracts of land through which it is laid, in a proceeding to which none of those interested in the construction of the ditch are parties, although, as to the remaining tracts, the owners may still be compelled to construct their allotments, or, indeed, may have already done so. If this is true, there is at least one case in which the property rights of a citizen may be taken from him without due process of law. We

can not assent to such doctrine. In our opinion the petitioners, and other parties to the proceeding, assessed for the construction of the ditch, had such an interest in the assessment in question that its lien could not be extinguished by the foreclosure of the paramount lien without giving them their day in court.

The petition for a rehearing is overruled.

Filed May 10, 1891.